## UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**ROBERT EARL SANDIFER**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO.  14-1670**

**ROBERT C. TANNER, ET AL.**                                **SECTION "F" (4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  On September 22, 2014, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.     **Factual and Procedural Background**

   A.     **Complaint**

The plaintiff, Robert Earl Sandifer ("Sandifer"), is an inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.  Sandifer filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, RCC Warden Robert C. Tanner, Lt. Col. Mike Todd, Major Mike Harrell, Classification Officer Kathy Seal, and Warden

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 12.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

Johnny Gerald seeking declaratory and monetary relief for his continued placement in protective custody rather than being transferred to another facility.

Sandifer alleged in his complaint that the defendants have ignored his repeated requests to be transferred to another prison facility for his protection.  He urged that their refusal is discriminatory and amounts to cruel and unusual punishment where white inmates were transferred to other facilities, and he was left in the restricted living quarters in administrative segregation.  He requests that the Court order defendants to transfer him to another facility and pay him compensatory damages for his continued detention in administrative segregation.

### B.  The *Spears* Hearing

Sandifer testified at the *Spears* Hearing that he is serving a twenty year sentence for attempted first degree robbery and attempted robbery.  He indicated that, at some point, he requested a transfer from Dixon Correctional Institute to RCC so that he could be housed near his brother, Willie Sandifer.  Upon his arrival at RCC, he created enemies due to "gambling" debts owed to other inmates.  He found the inmates at RCC to be disrespectful, and he was placed on suicide watch in 2013 as a result of his upset.

Sandifer also stated that, on April 22, 2013, he was placed in administrative segregation after an incident with another inmate.  He stated that, armed with a pipe, he went to a dormitory yard where he should not have been to fight another inmate known to him as "Hookfin."  He indicated that it was a preemptive attack, because Hookfin had threatened him.  As a result, he received several disciplinary violations and was sentenced to 90 days on a working cell block and ten days in isolation with an additional four weeks of cell confinement.

Sandifer indicated that, at the end of the disciplinary sentence, he had to wait for a place in a working cellblock. He stated that he refused to go to general population or a working cell block, because he would be back among the disrespectful inmates and enemies he made. As a result, on July 8, 2013, he requested that he be placed in protective custody and his request was granted on July 10, 2013. He quickly learned that protective custody meant that he would remain in the same administrative segregation area and based on his location and need for security, he would be denied certain privileges that he would have had in a regular or working cellblock.

After being exposed to this type of confinement, Sandifer stated that he requested a transfer to another facility for his protection. He claimed that the prison officials said that his only choices were to remain in protective custody or go back to general population, because there was no reason to transfer him to another facility.

Sandifer further claims that the defendants' refusal to transfer him is racially motivated. He believes this to be true because three white inmates who were in protective custody with him were transferred to other facilities. He identified these inmates as Andrew Wetzel, Nathaniel Mince, and Jeremiah Clark. Sandifer conceded at the hearing that Wetzel and Mince were his brother Willie's "lovers" and requested protection after Willie broke up with them and they claimed to have been raped. He also claimed that three other inmates, Truman Reavis, Gary Scheffler, and Joel Pedelahore, were transferred to other facilities after he made his request. He argues that leaving him on the restricted tier is cruel and unusual punishment, that may have been motivated by Warden Tanner because of another lawsuit Sandifer filed related to his medical care.

Upon further questioning by the Court at the hearing, Sandifer testified that he sued defendant Seal because she was on the protective custody review board and has left him in

protective custody rather than transferring him to another facility.  He also claims that Seal and Todd will not entertain any plans to transfer him.  Sandifer conceded, however, that he never made any direct request to either Seal or Todd to be moved to another prison.  He also believes that they should have known to transfer him instead of leaving him in the administrative segregation area. In spite of this, he indicated that he did not know whether Seal and Todd were involved in the transfer of the white inmates.

Sandifer further indicated that he sued defendant Harrell because Harrell should have recommended a transfer after doing his investigation into Sandifer's need for protective custody. He stated, however, that he did not give Harrell, Warden Gerald, or Warden Tanner the names of the inmates who were harassing him.  He instead only gave the names to Captain Jody Knight when he made his initial request for protection.

At the close of the hearing, the Court ordered counsel for the defendants to provide copies of certain RCC records clarifying the basis for and investigation of Sandifer's request for protective custody, and those records were timely received.  The documents also outlined the basis for the protective custody and relocation of the inmates referenced by Sandifer in his pleadings and *Spears* Hearing testimony.  The documents and records have been reviewed *in camera* and remain under seal in the custody of the Court.

## II.     <u>Standard of Review for Frivolousness</u>

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other*

grounds; *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.  <u>Analysis</u>

Sandifer claims that he is being held in protective custody, based on his request, and would prefer that he be transferred to another prison facility. Sandifer has named five defendants, Warden Tanner, Lt. Col. Todd, Major Harrell, Officer Seal, and Warden Gerald, whom he alleges played some role in the decision not to transfer him. He concedes, however, that the defendants have responded to the complaints he has voiced, albeit not to his satisfaction, and have provided him with protective custody and continued monitoring of his placement with weekly and regular boards of review. He generally has been unable in his complaint and at the *Spears* Hearing to assert a

particular constitutional violation committed by a particular defendant, and ultimately conceded that each of the defendants had done what he or she was supposed to do; that is, protect him from known enemies.

Nevertheless, under a broad reading, Sandifer urges that his continued confinement in protective custody in RCC's administrative segregation area amounts to cruel and unusual punishment and may have been initiated by retaliatory motive. He also suggests that the failure to transfer him was discriminatory and a violation of equal protection where white inmates in protective custody have been transferred to other facilities upon request. Thus, despite his inability to pinpoint a particular liable defendant, Sandifer's underlying claims as considered against any of these defendants are frivolous and otherwise fail to state a claim for which relief can be granted.

### A.  Due Process and the Request for Transfer

Sandifer has made clear that he would prefer to be transferred to another prison facility rather than remain in protective custody at RCC. He conceded at the *Spears* Hearing that he is in protective custody pursuant to his own request and that he receives regular review of his custodial status. At each review, he continues to believe that he is in danger, and he is being provided the necessary protection from his known enemies by his placement in protective custody. Sandifer is simply dissatisfied with the restrictive living arrangements imposed by his protective custody status which requires his placement in the administrative segregation area of RCC. Before proceeding to the conditions of his confinement addressed later, the Court finds that his insistence on a transfer to another facility itself is frivolous and otherwise fails to state a claim for which relief can be granted.

The law is clear that a prisoner has no right stemming from the United States Constitution and laws to be housed in any particular facility or to be transferred from one prison facility to another, even if conditions and amenities in one prison may be preferable to that in another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009) (citing *Olim*, 461 U.S. at 245; *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996)); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). As the United States Fifth Circuit Court of Appeals has squarely held, "[t]he Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000). He has no substantive federal constitutional right to be transferred to or confined in a place of his choosing.

It is, however, possible for a constitutionally protected liberty interest to be created by state law, although not every state statute creates such a liberty interest. A state statute creates constitutionally protected interests only if it establishes that state officials must take mandatory, non-discretionary actions in connection with the life, liberty or property of citizens. *Olim*, 461 U.S. at 249; *Taylor v. Jagers*, 115 F. App'x 682, 684 (5th Cir. 2004) (citing *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989)); *Lathers v. Nelson Coleman Corr. Ctr.*, No. 10-128, 2010 WL 1489903, at *3 (E.D. La. Mar. 22, 2010) (Shushan, M.J.), *report adopted*, 2010 WL 1485468, at *1 (E.D. La. Apr. 13, 2010) (McNamara, J.). Thus, state statutes that vest officials with broad discretion to carry out their official functions do not create constitutionally protected interests that may form the basis for an action under § 1983. *See Olim*, 461 U.S. at 249-50 (finding Hawaii prison regulations vesting prison administrators with broad discretion concerning inmate placement and transfers create no

liberty interest protected under the Due Process Clause); *Merit v. Lynn*, 848 F. Supp. 1266, 1267-68 (W.D. La. 1994) (finding Louisiana parole statute is broadly discretionary and creates no constitutionally protected liberty interest).

Sandifer's request for a prison transfer is governed by La. Rev. Stat. § 15:824(A), which states in relevant part as follows:

> [A]ny individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and <u>not to any particular institution</u> within the jurisdiction of the department. The secretary of the department <u>may</u> transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs <u>established by the department</u>.

(emphasis added).

The statute vests extremely broad discretion in Louisiana Department of Corrections ("DOC") officials who are responsible for the placement of state prisoners. In considering this statutory scheme, the Fifth Circuit has clearly held that "a prisoner has no liberty interest in being housed in any particular facility." *Yates*, 217 F.3d at 334; *accord Oglesby v. Gusman*, No. 09-3593, 2009 WL 3254145, at *3-4 (E.D. La. Oct. 7, 2009) (Order adopting Report) (Vance, J.); *see also*, *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994) ("The legislature by these enactments has manifested a clear intent to leave the physical placement of prisoners within the jurisdiction of the DOC alone."). The State of Louisiana by enacting broadly discretionary statutes has <u>not</u> created a protected liberty interest in being housed in a particular prison or being transferred from RCC to another facility to accomodate his protective custody already being provided at RCC.

For this reason, Sandifer's § 1983 assertions that he is entitled to a transfer are frivolous and otherwise fail to state a claim for which relief can be granted and must be dismissed pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e.

B.     **Equal Protection and the Request for Transfer**

Sandifer also alleges that the denial of his request for a transfer violates equal protection rights where White inmates in protective custody were transferred out of RCC rather than forced to remain under the restrictions in the administrative segregation area at RCC.  This claim is also frivolous.

"Federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84 (1987).  "Inmates [clearly] have the constitutional right to be free from racial discrimination."  *Bentley v. Beck*, 625 F.2d 70, 71 (5th Cir. 1980); *Lee v. Washington*, 390 U.S. 333 (1968).  However, the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large.  *Shaw v. Murphy*, 532 U.S. 223 (2001).  A prisoner must allege either a specific act of discrimination or offer proof of discriminatory intent by prison officials and may not rest an equal protection claim "on only his personal belief that discrimination played a part" in the complained-of act.  *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).  Conclusory claims of discrimination do not establish discriminatory intent.  *See Eltayib v. Cornell Companies Inc.*, 533 F. App'x 414, 415 (5th Cir. 2013).

Thus, a prisoner's equal protection claim must fail where he does not allege any facts to demonstrate that prison officials "purposefully intended to discriminate against <u>him</u> as a member of an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 474 (5th Cir. 2001) (emphasis added) ; *Woods*, 51 F.3d at 580 (denying prisoner's equal protection claim because he failed to offer proof of discriminatory intent or a specific act of discrimination); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (finding that inmate's equal protection claim failed as he did not allege he was a member of a protected class or suffered a violation of a fundamental right).  Absent an allegation

9

of improper motive, a mere claim of inconsistent outcomes in particular, individual instances will not provide a basis for relief.  *See Thompson v. Patteson*, 985 F.2d 202, 207 (5th Cir. 1993).

As outlined above, Sandifer claims that he has been denied equal protection by the refusal to transfer him to another facility because white inmates in protective custody have been transferred to other facilities while he is left to suffer the effects of protective custody at RCC.  While he did not specifically attest to it, the records provided by the defendants indicate that Sandifer is a black male.

The Court reiterates that Sandifer has failed to point to the denial of any cognizable constitutional right where he has no protected right to a transfer or to be in any particular location or classification within the prison system.  There is no violation of a fundamental right by the denial of his request for a transfer based on his race.

In addition, Sandifer has not alleged more than a conclusory assertion that his request for transfer was denied based on some race distinction made by the defendants.  Sandifer contends that discrimination is demonstrated by the fact that up to six white inmates were transferred out of RCC in connection with their own need for protective custody.  His argument itself recognizes that each inmate's placement is based on the particular need of the inmate not race.  Further, the claim that these white inmates were transferred out of RCC is not factually supported by the prison records.

The Court has reviewed the basis for the transfers of each of the inmates identified by Sandifer.  The records are of an extremely sensitive nature and, for the reasons of security and privacy referenced by counsel for the defendants, the Court will not recite the details of those incidents.  Nevertheless, having completed the *in camera* review, the Court finds that the factual basis underlying the protective custody provided to the other inmates were distinct from that of

Sandifer and legitimate and reasonable security considerations existed that warranted the prison officials' distinct treatment.

For example, Sandifer testified that he requested protective custody out of fear of retaliation by other inmates to whom he had become indebted and refused to repay. His concerns were in anticipation of possible physical danger by these creditors/inmates, a predicament he readily admits was his own fault. The inmates referenced by Sandifer were placed in protective custody at RCC after having already experienced physical injury by other inmates, including Sandifer's brother Willie, or due to heightened security issue unrelated to other inmates. In fact, the majority of the identified inmates were not transferred away from RCC at all, and instead were actually returned to general population at RCC and/or eventually transferred into reentry type programs in anticipation of their release from prison. In sum, Sandifer can not establish that RCC officials transferred white inmates out of RCC rather than hold them in protective custody based solely on race.

Without some unconstitutional act, discriminatory intent, or showing of disparate treatment, Sandifer has failed to assert an equal protection claim. Sandifer's claim is simply based "on only his personal belief that discrimination played a part" and that is not sufficient to state an equal protection claim. *Woods*, 51 F.3d at 580. This claim should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

### C.    Retaliation and the Request for Transfer

In a rather vague reference, Sandifer suggested that the denial of his request for a transfer may have been motivated by Warden Tanner in retaliation for his filing of a civil rights suit related to his medical care at RCC. Sandifer alleged that, before filing this suit, he wrote to Warden Tanner about being transferred and the Warden replied simply that he had no plans to transfer him. Sandifer

now contends that this statement by the Warden is unjustified.  Sandifer's allegations, however, are insufficient to state a claim of retaliation and can be dismissed as frivolous.

Prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  The law prohibits such retaliatory acts:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

*Clarke v. Stalder*, 121 F.3d 222, 231 (5th Cir. 1997), *vacated in part and reinstated in relevant part*, 154 F.3d 186, 191 (5th Cir. 1998) (quotations and additional citations omitted) (citing *Bounds v. Smith*, 430 U.S. 817 (1977), *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), and *Woods*, 60 F.3d at 1164-66).  The Fifth Circuit has expressed a caution for courts considering a prisoner's claim of retaliatory actions by prison officials, because "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  *Woods*, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  *Id.*

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that <u>but for</u> the retaliatory motive the complained of incident . . . would not have occurred.  This places a significant burden on the inmate . . . .  The inmate must produce <u>direct evidence of motivation</u>

> or, the more probable scenario, "allege a chronology of events from which retaliation
> may plausibly be inferred."

*Id.* (emphasis added) (citations omitted).

Based on these principals, to state a constitutional violation, a prisoner "must show that he suffered a qualifying adverse retaliatory act." *Morris*, 449 F.3d at 684. Without more than a *de minimis* impact, the prisoner has suffered no constitutional injury. *Id.* "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.*, at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). The plaintiff must demonstrate "more than his personal belief that he was the victim of retaliation." *Decker v. McDonald*, No. 09-27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (Craven, M.J.), *report adopted*, 2010 WL 1424292, at *1 (E.D. Tex. Apr. 7, 2010) (Folsom, J.). Mere conclusory allegations of retaliation will not suffice. *Id.* at *15.

Sandifer has not adequately alleged a retaliation claim or that a violation of his federal constitutional rights has occurred under the circumstances described in his complaint. Sandifer has pointed to no fact that would indicate a retaliatory motive for his placement in protective custody or that, but for a retaliatory motive, he was left in protective custody. Sandifer readily concedes that he asked to be placed in protective custody and that each of the prison officials has assured his protection. Thus, his placement in protective custody alone was not retaliatory.

Sandifer's only real complaint is that he is not being transferred to another facility. As discussed above, Sandifer has no right to be transferred. Furthermore, he is not in any danger, or suffering any atypical adverse condition, by his placement in protective custody at RCC. He also has not shown that the denial of his request for transfer has dissuaded him from exercising a constitutional right, as evidenced by the filing of this lawsuit.

Furthermore, to the extent he claims that Warden Tanner may have retaliatory motive based on his filing of another civil rights complaint, his claim is unsupportable and speculative. The records of this Court reflect that Sandifer filed his civil rights complaint related to his medical care over five months <u>after</u> he filed the instant complaint.[3] Warden Tanner could not have been motivated to deny his request to be transferred by the filing of a lawsuit that had not yet occurred. In addition, the fact that Sandifer was able to file that medical indifference suit also evidences that his placement in protective custody rather than a transfer did not deter him from exercising his constitutional rights.

Sandifer's vague retaliation claim is conclusory and speculative and must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted. *See Sanchez v. Grounds*, 591 F. App'x 263, 264-65 (5th Cir. 2015) (finding that allegations that are conclusory and speculative do not give rise to any inference that a prison official's actions were motivated by a retaliatory intent) (citing *Woods*, 60 F.3d at 1166).

### D.    Conditions of Protective Custody

Sandifer alleges that the conditions, or restricted freedoms, resulting from his placement in protective custody amount to cruel and unusual punishment. He complains that RCC places protective custody inmates in the same administrative segregation area as inmates in disciplinary confinement and suicide watch. As a result, he only has limited outdoor recreation and reduced privileges that he would have had in general population.

However, maintenance of prison and inmate security is a legitimate function of prison officials, who must be accorded broad discretion in that function. *See Bell v. Wolfish*, 441 U.S. 520,

---

[3]*See* Civ. Action 14-2992"B"(1), *Sandifer v. Tanner*.

547 (1979) ("[S]ecurity considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.") (quotation omitted); *Waganfeald v. Gusman*, 674 F.3d 475, 485 (5th Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 328 (2012).  As Sandifer reluctantly agrees, his placement in protective custody has provided him with safety from his known enemies and fulfilled the defendants' obligation to protect him from harm.

Furthermore, the Constitution does not recognize an inmate's "interest in avoiding transfer to more adverse conditions of confinement." *See Meachum*, 427 U.S. at 225 (finding prisoner has no constitutional interest in avoiding placement in maximum security as opposed to low security facility).  Instead, the Constitution provides inmates with protection only from classification or assignment that "imposes atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); .  Thus, as the United States Supreme Court has recognized in the context of inmates' due process rights, placement in a prison unit where inmates face more restrictive conditions of confinement than in other facilities does not result in violation of constitutional rights, unless the conditions "impose an atypical and significant hardship within the correctional context." *Wilkinson v. Austin*, 545 U.S. 209, 221-24 (2005).

In this case, the restrictive conditions described by Sandifer do not rise to the level of cruel and unusual punishment proscribed by the Eighth Amendment.  Sandifer has only indicated that he has limited outdoor recreation opportunities and limitations on or limited access to other unspecified amenities.  While "deprivation of exercise may constitute an impairment of health, which is actionable under the Eighth Amendment," *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir.

2008), it is clear that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation."  *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (Table, Text in Westlaw) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); *accord Sampson v. Corrs. Corp. of America*, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991)); *Lato v. U.S. Atty. Gen.*, 773 F. Supp. 973, 978 (W.D. Tex. 1991) (citing *Beck v. Lynaugh*, 842 F.2d 757, 762 (5th Cir. 1988)).  To succeed on a claim under § 1983 for lack of exercise, a prisoner must establish "the existence of any health hazard under the specific circumstances involved."  *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982); *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986).  Sandifer has not alleged any such result from the conditions of his confinement.

In fact, Sandifer does not allege any atypical condition arising from his placement in protective custody.  He has not alleged the kind of serious harm or deprivation of basic human needs or any deliberate indifference by prison officials required to state a claim for unconstitutional conditions of confinement.  Under these circumstances, Sandifer's claim is frivolous and otherwise fails to state a claim for which relief can be granted.

## IV.   Recommendation

It is therefore **RECOMMENDED** that Sandifer's § 1983 claims against the defendants, Warden Tanner, Lt. Col. Todd, Major Harrell, Officer Seal, and Warden Gerald, be **DISMISSED**

**WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this day of 27th of April, 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.